**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANABELLE LA, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CROWN CASTLE INTERNATIONAL CORP., JAY A. BROWN, and DANIEL K. SCHLANGER, <br><br> Defendants. | **Case No:** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Anabelle La ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the

1

Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Crown Castle International Corp. ("Crown Castle" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Crown Castle securities between February 26, 2018 and February 26, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district. Crown Castle also has an office in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff Anabelle La, as set forth in the accompanying certification, incorporated by reference herein, purchased Crown Castle securities during the Class Period and was economically damaged thereby.

7.      Defendant Crown Castle purports to own, operate and lease more than 40,000 cell towers and more than 75,000 route miles of fiber supporting small cells and fiber solutions across every major U.S. market.

8.      Crown Castle is incorporated in Delaware and its head office is located at 1220 Augusta Drive, Suite 600, Houston, TX 77057. Crown Castle's securities trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "CCI."

9.     Defendant Jay A. Brown ("Brown") has served as the Company's Executive Officer ("CEO"), President, and as a Director during the Class Period.

10.     Defendant Daniel K. Schlanger ("Schlanger") has served as the Company's Chief Financial Officer ("CFO"), Senior Vice President, and Treasurer during the Class Period.

11.     Defendants Brown and Schlanger are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

13.    Crown Castle is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Crown Castle under *respondeat superior* and agency principles.

15.    Defendant Crown Castle and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**
**Materially False and Misleading**
**Statements Issued During the Class Period**

16.    On February 26, 2018, Crown Castle filed with the SEC its annual report on Form 10-K for the year ended December 31, 2017 (the "2017 Annual Report"). Attached to the 2017 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Brown and Schlanger

attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

17.    The 2017 Annual Report stated the following, in pertinent part, regarding Crown Castle's internal controls:

> ***Controls and Procedures***
> **(a) Conclusion Regarding the Effectiveness of Disclosure Controls and Procedures**
> In connection with the preparation of this Annual Report on Form 10-K, as of December 31, 2017, the Company's management conducted an evaluation, under the supervision and with the participation of the Company's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 ("Exchange Act")). ***Based upon their evaluation, the CEO and CFO concluded that the Company's disclosure controls and procedures, as of December 31, 2017, were effective*** to provide reasonable assurance that information required to be disclosed by the Company in the reports filed or submitted by it under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and to provide reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its CEO and CFO, as appropriate to allow timely decisions regarding required disclosure.
>
> \*        \*        \*
>
> Management has assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2017. ***Based on the Company's assessment, management has concluded that the Company's internal control over financial reporting was effective as of December 31, 2017 to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial***

*statements for external reporting purposes in accordance with U.S. generally accepted accounting principles.*

\*      \*      \*

There have not been any changes in the Company's internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act) during the most recent fiscal quarter that have materially affected or are reasonably likely to materially affect the Company's internal control over financial reporting.

(Emphasis added.)

18.    The 2017 Annual Report reported Crown Castle's net income for the year ended December 31, 2017 at $444,550,000.

19.    The 2017 Annual Report reported Crown Castle's adjusted EBITDA for the year ended December 31, 2017 at $2,481,761,000.

20.    On February 25, 2019, Crown Castle filed with the SEC its annual report on Form 10-K for the year ended December 31, 2017 (the "2018 Annual Report"). Attached to the 2018 Annual Report were certifications pursuant to SOX signed by Defendants Brown and Schlanger attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

21.    The 2018 Annual Report stated the following, in pertinent part, regarding Crown Castle's internal controls:

*Controls and Procedures*

7

**(a) Conclusion Regarding the Effectiveness of Disclosure Controls and Procedures**

In connection with the preparation of this Annual Report on Form 10-K, as of December 31, 2018, the Company's management conducted an evaluation, under the supervision and with the participation of the Company's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 ("Exchange Act")). ***Based upon their evaluation, the CEO and CFO concluded that the Company's disclosure controls and procedures, as of December 31, 2018, were effective*** to provide reasonable assurance that information required to be disclosed by the Company in the reports filed or submitted by it under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and to provide reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its CEO and CFO, as appropriate to allow timely decisions regarding required disclosure.

**(b) Management's Report on Internal Control Over Financial Reporting**

Management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) for the Company. Under the supervision and with the participation of the Company's CEO and CFO, management assessed the effectiveness of the Company's internal control over financial reporting based on the framework described in "Internal Control – Integrated Framework (2013)," issued by the Committee of Sponsoring Organizations of the Treadway Commission. ***The Company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles.***

\*      \*      \*

8

Management has assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2018. ***Based on the Company's assessment, management has concluded that the Company's internal control over financial reporting was effective as of December 31, 2018 to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with U.S. generally accepted accounting principles.***

\*     \*     \*

**(c) Changes in Internal Control Over Financial Reporting**
There have not been any changes in the Company's internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act) during the most recent fiscal quarter that have materially affected or are reasonably likely to materially affect the Company's internal control over financial reporting.

(Emphasis added.)

22.    The 2018 Annual Report reported Crown Castle's net income for the year ended December 31, 2018 at $671,000,000.

23.    The 2018 Annual Report reported Crown Castle's adjusted EBITDA for the year ended December 31, 2018 at $3,141,000,000.

24.    On May 3, 2019, Crown Castle filed with the SEC its quarterly report on Form 10-Q for the quarter ended March 31, 2019 (the "1Q 2019 10-Q"). Attached to the 1Q 2019 10-Q were certifications pursuant to SOX signed by Defendants Brown and Schlanger attesting to the accuracy of financial reporting,

the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25.    The 1Q 2019 10-Q stated the following, in pertinent part, regarding Crown Castle's internal controls:

**CONTROLS AND PROCEDURES**
**Disclosure Controls and Procedures**
The Company conducted an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, of the effectiveness of the Company's disclosure controls and procedures as of the end of the period covered by this report. ***Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective*** in alerting them in a timely manner to material information relating to the Company required to be included in the Company's periodic reports under the Securities Exchange Act of 1934, as amended.

**Changes in Internal Control Over Financial Reporting**
There have been no changes in the Company's internal control over financial reporting during the fiscal quarter covered by this report that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting. We have updated our existing information technology systems, review processes, and internal controls to align with the requirements of the new lease standard, which we adopted on January 1, 2019.

(Emphasis added.)

26.    The 1Q 2019 10-Q stated the following, in pertinent part, regarding Crown Castle's net income:

Net income (loss) attributable to CCIC stockholders was income of $210 million during the first quarter of 2019 compared to income of $114 million during the first quarter of 2018. ***The increase was***

***predominately related to net growth in our Towers and Fiber segments*** and a decrease in losses on retirement of long-term obligations, partially offset by an increase in expenses, including increases in depreciation, amortization, and accretion and selling, general and administrative expenses.

(Emphasis added.)

27.    The 1Q 2019 10-Q stated the following, in pertinent part, regarding Crown Castle's EBITDA: "Adjusted EBITDA increased $58 million, or 8%, from the first quarter of 2018 to the first quarter of 2019. Adjusted EBITDA was positively impacted by the growth in our site rental activities in both the Towers and Fiber segments."

28.    On July 31, 2019, Crown Castle filed with the SEC its quarterly report on Form 10-Q for the quarter ended June 30, 2019 (the "2Q 2019 10-Q"). Attached to the 2Q 2019 10-Q were certifications pursuant to SOX signed by Defendants Brown and Schlanger attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

29.    The 2Q 2019 10-Q stated the following, in pertinent part, regarding Crown Castle's internal controls:

### CONTROLS AND PROCEDURES
**Disclosure Controls and Procedures**
The Company conducted an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, of

the effectiveness of the Company's disclosure controls and procedures as of the end of the period covered by this report. ***Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective*** in alerting them in a timely manner to material information relating to the Company required to be included in the Company's periodic reports under the Securities Exchange Act of 1934, as amended.

### Changes in Internal Control Over Financial Reporting

There have been no changes in the Company's internal control over financial reporting during the fiscal quarter covered by this report that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting. We have updated our existing information technology systems, review processes, and internal controls to align with the requirements of the new lease standard, which we adopted on January 1, 2019.

(Emphasis added.)

30.    The 2Q 2019 10-Q stated the following, in pertinent part, regarding

Crown Castle's net income:

Net income (loss) attributable to CCIC stockholders was income of $246 million during the second quarter of 2019 compared to income of $180 million during the second quarter of 2018. ***The increase was predominately related to net growth in our Towers and Fiber segments***, partially offset by an increase in expenses, including increases in (1) selling, general and administrative expenses, (2) depreciation, amortization and accretion, and (3) interest expense and amortization of deferred financing costs.

(Emphasis added.)

31.    The 2Q 2019 10-Q stated the following, in pertinent part, regarding

Crown Castle's EBITDA: "Adjusted EBITDA increased $88 million, or 11%,

from the second quarter of 2018 to the second quarter of 2019. Adjusted EBITDA

was positively impacted by the growth in our site rental activities in both the Towers and Fiber segments."

32.    On October 16, 2019, Crown Castle released its "Supplemental Information Package and Non-GAAP Reconciliations" for the quarter ended September 30, 2019 (the "3Q 2019 Supplemental Information Package"). In the 3Q 2019 Supplemental Information Package, adjusted funds from operations ("AFFO") was stated as $646,000,000 and $579,000,000 for the three months ended September 30, 2019 and 2018, respectively, and $1,871,000,000 and 1,683,000,000 for the nine months ended September 30, 2019 and 2018, respectively.

33.    Also on October 16, 2019, Crown Castle issued a press release entitled "CROWN CASTLE REPORTS THIRD QUARTER 2019 RESULTS, PROVIDES OUTLOOK FOR FULL YEAR 2020 AND ANNOUNCES 7% INCREASE TO COMMON STOCK DIVIDEND" which provided the Company's midpoint of 2020 full year outlook as: $5,219,000,000 for site rental revenues; $1,128,000,000 for net income; $3,592,000,000 for adjusted EBITDA; and $2,685,000,000 for AFFO.

34.    On November 4, 2019, Crown Castle filed with the SEC its quarterly report on Form 10-Q for the quarter ended September 30, 2019 (the "3Q 2019 10-Q"). Attached to the 3Q 2019 10-Q were certifications pursuant to SOX signed by

Defendants Brown and Schlanger attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

35.    The 3Q 2019 10-Q stated the following, in pertinent part, regarding Crown Castle's internal controls:

> **CONTROLS AND PROCEDURES**
> **Disclosure Controls and Procedures**
> The Company conducted an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, of the effectiveness of the Company's disclosure controls and procedures as of the end of the period covered by this report. ***Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective*** in alerting them in a timely manner to material information relating to the Company required to be included in the Company's periodic reports under the Securities Exchange Act of 1934, as amended.
>
> **Changes in Internal Control Over Financial Reporting**
> There have been no changes in the Company's internal control over financial reporting during the fiscal quarter covered by this report that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting. We have updated our existing information technology systems, review processes, and internal controls to align with the requirements of the new lease standard, which we adopted on January 1, 2019.
>
> (Emphasis added.)

36.    The 3Q 2019 10-Q stated the following, in pertinent part, regarding Crown Castle's net income:

Net income attributable to CCIC stockholders was $244 million during the third quarter of 2019 compared to $136 million during the third quarter of 2018. ***The increase was predominately related to net growth in our Towers and Fiber segments*** and a decrease in losses on retirement of long-term obligations, partially offset by an increase in interest expense and amortization of deferred financing costs.

(Emphasis added.)

37.     The 3Q 2019 10-Q stated the following, in pertinent part, regarding Crown Castle's EBITDA: "Adjusted EBITDA increased $89 million, or 11%, from the third quarter of 2018 to the third quarter of 2019. Adjusted EBITDA was positively impacted by the growth in our site rental activities in both the Towers and Fiber segments."

38.     The statements contained in ¶¶16-37 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Crown Castle's internal control over financial reporting and disclosures controls and procedures were ineffective and materially weak; (2) Crown Castle's financial accounting and reporting was not in accordance with GAAP; (3) Crown Castle's net income, adjusted EBITDA, and AFFO were inflated; (4) Crown Castle would need to restate its financial statements for the years ended December 31, 2018 and 2017, and unaudited financial information for the quarterly and year-

to-date periods in the year ended December 31, 2018 and for the first three quarters in the year ended December 31, 2019; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## **THE TRUTH EMERGES**

39.    On February 26, 2020, Crown Castle issued a press release which announced:

> Our long-standing historical practice with respect to services revenues had been to recognize the entirety of the transaction price from our tower installation services as services revenues upon the completion of the installation services. ***After consultation with the [SEC's Office of the Chief Accountant], we concluded that our historical practice was not acceptable under GAAP.***
>
> \*        \*        \*
>
> ***As a result, the preliminary impact to each of Net Income, Adjusted EBITDA and AFFO is a decrease of approximately $100 million for full year 2019 actuals and a decrease of approximately $90 million to our Previous 2020 Outlook.***
>
> \*        \*        \*
>
> ***Due to the identified errors described above, we will restate our financial statements for the years ended December 31, 2018 and 2017, and unaudited financial information for the quarterly and year-to-date periods in the year ended December 31, 2018 and for the first three quarters in the year ended December 31, 2019.*** Restated financial statements and financial information for the periods in question will be reflected in Crown Castle's Annual Report on Form 10-K for the year ended December 31, 2019 ("2019 10-K"), which Crown Castle expects to file within the prescribed timeline for such report, including any available extension if needed to finalize the

consolidated financial statements and disclosures and complete the associated audit work.

*       *       *

***Crown Castle has determined that the restatement of its previously issued financial statements as described above indicates the existence of one or more material weaknesses in its internal control over financial reporting and that its internal control over financial reporting and disclosure controls and procedures were ineffective as of December 31, 2019.*** Crown Castle will report the material weakness(es) in its 2019 10-K and intends to create a plan of remediation to address the material weakness(es).

(Emphasis added.)

40.    On this news, shares of Crown Castle fell $14.38 per share, or over 8.8%, to close at $148.31 per share on February 27, 2020, damaging investors.

41.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Crown Castle securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Crown Castle, members of the Individual Defendants' immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

43.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Crown Castle securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

44.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

45.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Crown Castle;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Crown Castle to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Crown Castle securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

48.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Crown Castle shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Crown Castle filed periodic public reports;

- Crown Castle regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Crown Castle's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Crown Castle was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

49.     Based on the foregoing, the market for Crown Castle securities promptly digested current information regarding Crown Castle from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they

contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Crown Castle securities during the Class Period.

55.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Crown Castle Education were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the

securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Crown Castle, their control over, and/or receipt and/or modification of Crown Castle's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Crown Castle, participated in the fraudulent scheme alleged herein.

56.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Crown Castle personnel to members of the investing public, including Plaintiff and the Class.

57.     As a result of the foregoing, the market price of Crown Castle securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Crown Castle securities during the Class Period in purchasing Crown Castle securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

58.    Had Plaintiff and the other members of the Class been aware that the market price of Crown Castle securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Crown Castle securities at the artificially inflated prices that they did, or at all.

59.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

60.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Crown Castle securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

61.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.    During the Class Period, the Individual Defendants participated in the operation and management of Crown Castle, and conducted and participated, directly and indirectly, in the conduct of Crown Castle's business affairs. Because

of their senior positions, they knew the adverse non-public information about Crown Castle's misstatement of revenue and profit and false financial statements.

63.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Crown Castle's financial condition and results of operations, and to correct promptly any public statements issued by Crown Castle which had become materially false or misleading.

64.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Crown Castle disseminated in the marketplace during the Class Period concerning Crown Castle's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Crown Castle to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Crown Castle within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Crown Castle securities.

65.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Crown Castle.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)    awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 27, 2020        **THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399

Email: lrosen@rosenlegal.com

Counsel for Plaintiff